**Affirmed and Memorandum Opinion filed November 17, 2020.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-19-00930-CR**
**NO. 14-19-00931-CR**

---

**WILLIAM RAY TREVINO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1622922 & 1648485**

---

## MEMORANDUM OPINION

Appellant William Ray Trevino appeals his convictions for deadly conduct and felon in possession of a firearm. In three issues appellant challenges (1) the conduct of voir dire; and (2) the sufficiency of the evidence to support his convictions. We affirm.

### BACKGROUND

The complainant Kris Patel was working at a smoke shop in Harris County on

the day of the offense. On the day of the offense appellant came into the store and was browsing but Patel became suspicious because appellant kept looking at the cameras. The store has approximately 15 cameras; four videos from the store's cameras were admitted into evidence without objection. Patel saw appellant take an item from a shelf and put the item in his shirt. Appellant left the store without paying for the item.

Appellant returned to the store later the same day with a female companion. The store surveillance video showed the female placing "lingerie items" inside her sweatshirt. Appellant and his companion left the store without paying for the lingerie items. Patel chose not to confront appellant at that time because he was concerned that a confrontation would become violent.

Within about an hour, appellant and the female companion returned, and Patel told them they could not come into the store. Patel explained that if they returned, he would call the police. Both appellant and his companion became aggressive with Patel. The female struck Patel in the face. Appellant and the female left but Patel did not call the police because he did not think they would come out.

Thirty minutes later Patel saw appellant on surveillance cameras approaching the store for a fourth time. Both appellant and the female were carrying weapons. Using a magnetic lock from the back office, Patel locked the front doors of the store to prevent appellant and his companion from entering the store. Appellant and the female pounded on the glass doors; appellant yelled to Patel to "come outside." Upon seeing the firearms Patel feared for his life. After locking the doors Patel called the police. Patel reported to police that appellant had said, "Come outside, let's handle this in the street." About one week later appellant came back to the store and tried to pay Patel $200 "to make the charge go away." By then Patel had already reported appellant's conduct to the police.

2

Officer David Kassir of the Houston Police Department responded to Patel's call on the night of the offense. Kassir also viewed the video footage and saw Patel confront the female about shoplifting and saw her hit Patel. Kassir also saw appellant and his companion return with weapons. Kassir testified that appellant's weapon looked like a hunting rifle and the companion's weapon looked like a revolver. Kassir believed the weapons were real and described the rifle as having a scope for hunting.

A Harris County Sheriff's Deputy testified that appellant's known fingerprints matched the fingerprints on a judgment and sentence from a previous felon-in-possession-of-a-weapon conviction.

## ANALYSIS

### I. Sufficiency of the Evidence

In his third issue appellant challenges the sufficiency of the evidence to support his convictions because the only evidence of appellant possessing a firearm was the surveillance video showing appellant holding what appeared to be a rifle and Patel's testimony that appellant was holding a rifle.

### A. Standard of Review

We review evidentiary sufficiency challenges under the standard set forth in *Jackson v. Virginia*. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The reviewing court must consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

The jury is the sole judge of the credibility of witnesses and the weight to

3

afford testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Williams v. State*, 473 S.W.3d 319, 324 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). When the record supports conflicting inferences, the reviewing court presumes the trier of fact resolved the conflicts in favor of the State and defers to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### B. The evidence was sufficient to establish that appellant used a firearm in the commission of the offense.

Appellant was convicted of deadly conduct and being a felon in possession of a weapon. A person commits deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. Tex. Pen. Code Ann. § 22.05. A person who has been convicted of a felony commits an offense if he possesses a firearm:

(1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

(2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

Tex. Pen. Code Ann. § 46.04.

Appellant argues the State did not prove that the firearm used during the offense was real because the rifle was not introduced into evidence and because Patel only testified that the object appellant was holding appeared to be a rifle.

The jury heard evidence from Patel that appellant was carrying a hunting rifle with a scope. Officer Kassir was specifically asked if the firearm he saw on the video

appeared real, and he responded that it did. The jury also viewed the video of appellant approaching the smoke shop carrying an item that appeared to be a hunting rifle with a scope.

There is no indication in the record that the object in appellant's hands could have been a toy or fake gun or a nonlethal gun such as a BB or paintball gun. Courts recognized that the fact finder may draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime. *See Williams*, 473 S.W.3d at 324. Absent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference, from the complainant's testimony and their observation of the video of the crime, that the object used in the commission of a crime, was, in fact, a firearm. *See Cruz v. State*, 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Appellant argues that the State did not introduce the actual firearm into evidence. However, the lack of physical evidence does not render the evidence supporting appellant's conviction insufficient. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). A rational jury could have found appellant guilty of deadly conduct and unlawful possession of a weapon without physical evidence of the firearm. *See Safian v. State*, 543 S.W.3d 216, 222 (Tex. Crim. App. 2018) ("when the threat of imminent bodily injury is accomplished by the use of a deadly weapon, the victim has by definition been exposed to the deadly character of the weapon and, as a result, placed in imminent danger of serious bodily injury").

A rational jury could have concluded, beyond a reasonable doubt, that the object in appellant's hands when he was pounding on the door of the shop was a firearm. *See Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. [Panel Op.] 1979) (holding evidence sufficient to support deadly-weapon finding when

complainant stated appellant pulled weapon on him and referred to it using terms "gun," "revolver," and "pistol" interchangeably throughout testimony); *Williams v. State*, 980 S.W.2d 222, 224–25 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding evidence sufficient to establish firearm was used where witness described gun as black and metal-like, without a chamber like a revolver, square in front, and similar to demonstrative exhibit shown at trial); *Carter v. State*, 946 S.W.2d 507, 509 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (holding that victims' testimony that defendant used gun similar to .25 caliber gun shown at trial and threatened to shoot victims if they did not do as he ordered was sufficient to authorize rational jury to find firearm was used during offense). Accordingly, the evidence is sufficient to show that appellant used a firearm in the commission of the offenses. We overrule appellant's third issue.

## II.    Voir Dire

In his first issue appellant asserts the trial court abused its discretion by preventing appellant from conducting permissible examination of individual veniremembers during voir dire examination. Specifically, appellant claims the trial court prevented him from asking three questions involving the veniremembers ranking their personal feelings about certain issues on a scale of zero to ten.

### A.    Presumption of Innocence

The first question was about the presumption of innocence. Appellant asked the veniremembers to rate their "personal feelings about guilt/innocence in this case."[1] The trial court interjected:

---

[1] At this point in the record there is no information about the scale appellant was asking the veniremembers to use. Later during voir dire, appellant explained that "Zero would be no effect on personal feelings about the guilt or innocence of the defendant or 10 would be a significant effect on your personal feelings about the Defendant's guilt or innocence."

6

> Ladies and Gentlemen I can tell you right now you have already told me that you will follow the law that presumes that the Defendant is innocent until and unless competent legal evidence is presented in a court of law proving beyond a reasonable doubt otherwise.
>
> On this scale anything other than writing down zero is not following that law. You're not making that presumption. He is as innocent as the day he was born. Under the eyes of the law until competent, legal evidence is presented in a court of law that proves otherwise. That's the law. It is as clear as day. It's black or white. Ain't no gray.
>
> You may continue.

Appellant proceeded to ask the veniremembers row by row whether they had personal feelings that would rate more than zero on appellant's scale. No veniremember responded.

## B. Right to Remain Silent

Appellant's next "scale" question addressed the defendant's right to remain silent and not testify. Appellant asked the veniremembers what would be "the effect on your personal feelings about the Defendant's guilt or innocence, if the defendant does not testify?" Appellant asked the veniremembers to rate their feelings on a scale of zero to ten. The trial court interjected:

> Ladies and Gentlemen once again if the Defendant chooses not to testify you will be instructed that you cannot and must not consider it for any purpose.
>
> Remember what I told you previously you have to base your decision on the evidence that you have. And if that evidence comes from one witness, five witnesses or 5,000 witnesses, if the evidence comes from only the State that's the evidence you consider. If the evidence comes from the State and comes from the Defendant, if he chooses to put on witnesses, or if he chooses to testify that is what you will consider. But if he does not testify you will be instructed by this Court that you are not to consider it or talk about it. You're to base your decision on the evidence. That's what you are to do.
>
> Can all of you do that?

Appellant proceeded to ask the veniremembers one-by-one, and each member answered, "Zero."

### C. Police Officer Credibility

Finally, appellant asked the veniremembers to "rate your personal feelings about weight you would give to the testimony of a person wearing a badge?" Appellant asked each individual veniremember, some of whom answered a number other than zero. Appellant further questioned those veniremembers about their answers. After appellant questioned juror no. 50, the trial court interjected, "That's far enough." Appellant objected to the trial court's restriction stating he was not permitted to examine members of the venire. The trial court overruled appellant's objection noting, "If it becomes necessary to go pas[t] [juror no. 50] you'll be given the opportunity."

At the conclusion of voir dire the trial court granted all challenges for cause asserted by appellant. After dismissing some veniremembers for cause, both sides exercised their peremptory strikes up through juror no. 45. No peremptory strikes were necessary beyond juror no. 45.

### A. Standard of review

A trial court abuses its discretion during voir dire if the court prohibits a proper question about a proper area of inquiry. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012) (citing *Sells v. State*, 121 S.W.3d 748, 755–56 (Tex. Crim. App. 2003)). "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Id*. (quoting *Sells*, 121 S.W.3d at 756). To preserve error regarding the manner of voir dire, the record must reflect a proper question that the trial court has not allowed venire members to answer and a ruling on the question. *Dhillon v. State*, 138 S.W.3d 583, 589 (Tex. App.—Houston [14th Dist.] 2004, pet.

stricken). That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration. *Sells*, 121 S.W.3d at 756; *Saldinger v. State*, 474 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

With regard to the first two questions on the presumption of innocence and the defendant's right not to testify, not only did appellant fail to preserve error by objecting to the trial court's comments, appellant was not prevented from asking his questions. Similarly, the trial court did not prevent appellant from asking a question about a police officer's credibility of a witness; the trial court stopped appellant's questioning at juror no. 50 presumably because the trial court did not anticipate reaching beyond juror no. 50 in jury selection.

Assuming without deciding that the trial court abused its discretion in truncating appellant's questioning of the venire, by stopping at juror 50, appellant's substantial rights were not affected. A trial court may impose reasonable restrictions on exercising voir dire examination. *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991). Otherwise, "voir dire could go on forever without reasonable limits." *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Nonetheless, a trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry. *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995).

A proper area of inquiry includes discovery of a potential juror's views on any issue relevant to the case. *Sells*, 121 S.W.3d at 756; *Barajas*, 93 S.W.3d at 38. A question can be relevant if it seeks to uncover grounds for a challenge for cause. *Barajas*, 93 S.W.3d at 39. A proper area of inquiry also includes those questions that assist a party in intelligently exercising peremptory challenges. *Id*.; *Dhillon*, 138 S.W.3d at 587.

Relying on *Smith v. State*, 703 S.W.2d 641 (Tex. Crim. App. 1985) and *Plair v. State*, 679 S.W. 267 (Tex. Crim. App. 1926) appellant asserts the right to question veniremembers is "fundamental," and is guaranteed by the Texas Constitution's right-to-counsel provision. In specifically overruling *Smith* and *Plair*, the Court of Criminal Appeals held in *Easley v. State*, that the trial court's limitation of an accused's voir dire presentation is not a per se violation of the right to counsel. 424 S.W.3d 535, 541 (Tex. Crim. App. 2014). In *Easley*, the court "unanimously rejected the 'overly broad conclusion that every restriction on counsel's voir dire presentation violates an accused's right to counsel.'" *Jacobs v. State*, 560 S.W.3d 205, 213 (Tex. Crim. App. 2018) (quoting *Easley*, 424 S.W.3d at 538). After *Easley*, at least some trial-judge-imposed limitations on voir dire will be found not to "run[ ] afoul of the Texas Constitution." *Id.*

Here, appellant cannot show harm because appellant was not required to use a peremptory strike on the veniremember he was prohibited from questioning because no peremptory strikes were required beyond juror no. 50. *See Dhillon*, 138 S.W.3d at 587 (a proper area of inquiry includes questions designed to assist a party in intelligently exercising peremptory challenges). Appellant was permitted to ask the police-officer-credibility question to the first 50 veniremembers. Asking the same question to the remaining veniremembers would not have assisted appellant in intelligently exercising his peremptory challenges. Because appellant failed to preserve error with regard to the first two questions and was not harmed by the interruption of his third question, we overrule appellant's first issue.

In appellant's second issue he asserts the trial court abused its discretion by not permitting him to ask proper commitment questions. In the argument section under this issue appellant contends his questions about the presumption of innocence and his right not to testify were proper commitment questions. As noted above, not

only did appellant fail to preserve error by objecting to the trial court's interjections, appellant was not prevented from asking those questions. We therefore overrule appellant's second issue.

Finally, appellant asserts the trial court abused its discretion by not granting a new trial in the interests of justice. Appellant timely filed a motion for new trial in his unlawful possession of a weapon conviction. There is no indication in the record that the trial judge ever saw the motion, and it was overruled by operation of law. *See* Tex. R. App. P. 21.8. A motion for new trial must be "presented" to the trial court within ten days of being filed. Tex. R. App. P. 21.6. The defendant must put the trial judge on actual notice that he desires the judge to take some action, such as making a ruling or holding a hearing, on his motion for new trial. *See Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) ("The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'"). "Presentment" must be apparent from the record, and it may be shown by such proof as the judge's signature or notation on the motion or proposed order, or an entry on the docket sheet showing presentment or setting a hearing date. *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009) There is nothing in the present record that demonstrates that appellant ever presented his motion personally to the trial judge. We therefore overrule appellant's issue asserting the trial court abused its discretion in denying his motion for new trial.

11

## CONCLUSION

Finding no reversible error, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
        Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).